OPINION of the Court, by
Judge Logan.
This is a contest for land, under adversary titles. Walton, who was the complainant below, claims under an entry in his own name, which was made on the 11th of «Pjíiy 1780, to adjoin “ Micajah Calloway’s settlement|feii| pre-emption,on the east side thereof, runningeastqiggil&‘ iy for quantity.” A*1*
Micajah Calloway, had obtained from the court.bf commissioners a certificate for a settlement and preemption, and on the 18th of January .1780, entered his settlement with the surveyor, conformably wi:h the location in his certificate, to lie “on the waters of the south fork of Licking creek, known by the ibame of Huston’s fork, joining James Calloway’s land on the east side.”
James Calloway on the same day entered his settlement right of 400 acres with the surveyor, in calls substantially the same with those contained m his location ivith the commissioners, to lie “on the south folk of the wateis of Licking creek, known by the name of Elus-ion’s fork, on the northwest side of the said branch, and one mile from tiie head thereof.”
We shall proceed in the fits! place to ascertain the position of James Calloway’s settlement. It is abundantly proven that Elusion’s folk of Licking was generally-known by that name both before and at the time of making these entries. And the head of it, as laid down in the plat, together with the evidence in relation to that as the main stream, can leave no doubt on this branch of the cause. There is nothing in the cause which can justify the inference of there being another *153 jirong to this creek equally answering the call of the entry.
That the creek does not prefent a N. W* but rather a S. f?*. fide, is hot aa objedion, . aa the fide intend* ed is evident.
The court below has therefore properly determined that this entry should be laid doWn beginning on the creek represented in the plat, one mile from its head,(a) -and thence down the same so far as will give the base of 400 acres, when reduced to a straight line, and at i'ight(b) angles therefrom wtstwardly for the quantity.
It was urged in argument, that the creek does not present a northwest side. It is true the creek, so far as it Is laid down in the plat, runs something west of north, and therefore presents rather southwest and northeast sides, than a northwest side. But notwithstanding this circumstance, there is certainly no room to doubt which bf the two sides of the creek was intended by the call for the northwest side, as the creek rains nearly a porth' It is not essential ⅛¾⅛ the description should Precisely correct with regard to the side of the creek lfor: it is suffecient that from the description gi-p!t could be known which side was intended, ¡"remains next to inquire into the validity and posi-i of'Micajah Calloway’s claim. The settlement right &f Micajah depends on the location of James Calloway’s settlement, his pre-emption not having been entered at that time. And it is not material to inquire, whether it sufficiently appears in the cause that James Calloway’s entry, which was made on the same day of that of Mi-cajah’s, was previously made or not, or whether such ani inference otight to be indulged, since the location in the certificate of the commissioners is substantially the same, wild without the entry with the surveyor would be good to support an entry depending thereon.
We are therefore of opinion that the settlement entry bf Micajah Calloway has also been correctly determined by the court below, adjoining that of James Calloway on the east the length of his base, and thence at right angles therfcfrom eastwardly for the quantity.
But the appellee’s entry calls to adjoin Micajah Cal-loway’s settlement and pre-emption. Now it appears that Micajah Calloway had transferred his pre-emption to James Fstdl, who having transferred it to Edward Walton, he, on the 26th of April 1780, entered the preemption with the surveyor.
Call for C’s *( fectlemenc Ss pre* eruption,” when C had no location on the preemption w’t ¿ball adjoin the pre emption on b- ,
The pre emption wa rant of C having been p rev/oufly en tered in the name of rhe ai. fignee, does not alter he cun &u¿?.c»n of this call, unlels th? pre emptior. en. try bad.retained the name or reputation or C’s pre-emption.
Court proper. \y re u ed to permit anfwers to be filed after decree given, without (hewing caufe for delays
Upon a caufe tried by change of venue, this courtwill award ctrtmari for the order < hanging the venue in cafe an ebjee^ tion is made to the juniuitfion of the court be. iow.
The question here presents itself, whether thé entry? of the appellee ought to be construed to adjoin the settlement of Calloway, or the pre-emption appendant thereto, which had been previously tranferred and entered in a different name ?
It has been decided by this court, and the doctrine is considered as now settled, that an entry calling to adjoin the land or the settlement and pre-emption of another, before the pre-emption right had been entered with the surveyor, shall be construed to adjoin the settlement only,(a) because the pre-emption occupies no ground whatever before it is located : it gives the mere right of pre emption adjoining the settlement, but assumes no certain position.
In this case, howev. r, there had been an actual entry of the pre-emption previously made, but in the name of Edward Walton, assignee, &c. Á subsequent loclior, ¡rom the description of this entry, would be put to the n q :■:y >,nlv lor the settlement and pre-emption entries ot Micajah Calloway. It furnishes no clew by which to ascertain the position of the pre-emption, in whose name it was entered, or whether it had been entered at-all, as he would have found no such entry in the name of Micajah Calloway. And hence the probable and just conclusion with him would have been, that the preemption of said Calloway had not been entered : and the ease, as to him, therefore, have been as a call for ⅞ settlement and pre-emption before the entry of the preemption had been made.
II the pre-emption as entered had retained the name, of Calloway’s, and its precise position been generally known, this circumstance might possibly have superseded the necessity of an examination on record to ascertain the position oi the claim. But this point is unnecessary to decide, because there is not proof in the cause to render a decision on this point indispensable.
Unless, therefore, a subsequent locator shall be presumed to have actual knowledge of all the entries on record, we are of opinion that the entry under consideration is not good to adjoin the pre emption of Walton, in whose name it is entered, by the call for Calloway. And we are of opinion that the law in requiring that, entries should be made with such precision as to enable others to appropriate with certainty the adjacent residu- *155 jgn, never intended that a subsequent locator should at his peril know prior entries not called for, farther than regarded th® rights of such entries themselves.
The call in this entry does not excite inquiry from others. It gives a name as on record, to find t ie settlement and pre-emption of that person ; the settlement would be found through the means thus given ⅜ but the appendage, the pre-emption not being thus ascertainable, inquiry is lulled under an apprehension that it did not exist in location and fixed position. It does not even call for the pre-emption of Micajah Calloway assigned to some other person, and thus induce an inquiry for the assignee of said claim. From these consideration^ it is the opinion ot this court that the entry of the ap-pellee must be construed to adjoin the settlement of Mi-eajah Calloway. In support of this doctrine, we conceive the cage of Allen and wife vs. Blanton, (vol. 2, 524) js entitled to considerable weight. In that case the entry called to join Joseph Blackford’s northwest line. Blackford had obtained a Certificate for a settlement and pre-emption, but had assigned his pre-emption to John May, who had assigned it to Craig and Johnson, who had entered the same adjoining the settlement beforp the entry then in contest was made : and it was held to adjoin the settlement, because the pre-emption had been transferred and was entered in a different name.
We can perceive no material difference susceptible of any precise and definite rneaning ⅛ communicating information to a subsequent locator, between calls for the land or line oi one who had obtained a settlement and pre-emption, or for the settlement and pre-emption, where in either case the pre emption had been transferred to another, unless the pre-emption had acquired general notoriety as located of surveyed by the name of the original claimant : that circumstance might,' perhaps, present a different case. It is not sufficient to infer that the locator intended to adjoin the pre-emption : this inference is as.cle^r when the call has tjeen for the settlement and pre-emption of one before the pre-emption was entered at all. - But in either case th® question is, Roes the entry afford the requisite information to other , locators ? If the meaning of the locator cap be fairly deduced from his entry to a precise spot, it is certainly ponclusiye. But to presume for him a meaning, though. *156 strongly to be implied, which leaves his entry in a state of Uncertainty with regard to the land he woúldfocate, wh< n it is susceptible of a dífférent construction, which fixes it to a precise spot, the latter seems to have been observed by the court as the proper rule. It is equally as Uncertain and embarrassing'to a subsequent locator, Whether he is to regard the call for a settlement and pre-emption, before the entry of the pre-emption, or after it has been made^if he is referred to it by a decep-five name ; and it seems to the court that in either case the same rule of construction should prevail.
It only remains to direct the manner of surveying this entry, ft should be surveyed adjoining the-settlement of Micajah Calloway on the east side, running from the centre of his line, as directed to be laid down, with the line southwardly and northwardly, passing the corners thereof equal distances so far as to give the base of the quantity, and thence at right angles to include the quantity in a square.
As the claim, when thus laid down, will comprehend different land from that as directed to be.surveyed by the court below, the decree of said court must therefore be reversed with costs, the cause remanded, &c.
With respect to thp other points made in the cause, it need only be observed that the application of the defendants below to file their answers after a final decree had been given, without shewing good cause, was properly overruled. And as to the jurisdiction of the court, it is sufficient that the order for the change of venue now appears to have been awarded. The court in the case of Barnes vs. Williams, on the same point awarded a certiorari to the court from which the suit had been removed, and on the return of the certiorari sustained the jurisdiction of the court to which the cause had been removed.

 Hall vs. Whitaker, vol. 1, 79.

 Craig vs. Hawkins, vol. 1, 55—Calk vs. Stribling 123—Clinkinbeard vs. Kenny, vol. 2, 517 18— Smith vs. Crimes, Hug 18—Bradford vs M'Clelland, Hughes 102-4.

 Ante 144 Blaine vs Thompson.