*363 OPINION of the Court, by
Ch. J. B otee.
The appellants were complainants in the court below, and derive their title to the land which is the subject of controversy under an entry for 1000 acres, made in the name of Francis Eppes Harris, on the 28th of Decern-her 1782, which calls to lie—
“ On Hingston’s fork of Licking, above the mouth of Taylor’s creek; to begin at a sugar tree marked H. standing on the bank of the south side of said fork, to extend 200 poles north, and 200 poles south, from said t^ee, and then from the extremities of said line west-V;;mlly, to form a square figure as nearly as the vacancy will admit to include the quantity.”
, The appellee, w ho was defendant in the court below, has a junior cut"- 'wit elder grant; so that the principal question in the case turns upon the validity of the entry under which the appellants derive their claim.
Where a deed has been burnt by accident* the written aclcnow ledgment of the grantor is fuffi-c<enc evidence that fuch deed had been executed*
Kingston's fork of Licking and Taylor’s creek, which empties into Kingston’s fork, are admitted by the parties to have been well known by those appellations respectively at and prior to the date of the entry in question; andón the south bank of Kingston’s fork, 103 poles above the mouth of Taylor’s creek, a sugar tree is shown which is proven to have been marked prior to the time when the entry was made with the letter H. so large and conspicuous that for many years afterwards it was visible at the distance of 20 or 25 yards. Other sugar trees are shown to stand on Kingston, both above and below the one claimed by the appellants ; but there is none of them represented to be so immediately on the bank of the stream, nor is it pretended that any of them is marked as described in the entry. Under these circumstances we cannot suppose that a subsequent locator would have had any difficulty in finding the tree which is the beginning of this entry. He would naturally commence his search at the mouth of Taylor’s creek. If from that point he pursued the margin of Kingston’s fork only for the distance of 103 poles, the object of his search could not in all reasonable probability escape his notice; and to make such a search would certainly not require more than reasonable diligence.
But admitting the beginning to be well established, it-is still contended that the entry is vague and uncertain. This objection is predicated, not upon any want of precision in the calls which fix the base of the survey, for that is defined with absolute certainty, but upon the vagueness of the calls which direct the course of the lines from the base. The call “ to run westwardly,’* unquestionably admits of considerable latitude : for lines, directed to any point between N. 45 W. and S. 45 W. would be equally within its meaning, according to the common acceptation of the term westwardly. If indeed there were no other controling call in the entry, for the purpose of conforming to the squaring principle, the call to run westwardly would by construction be limited to that point between N. 45 W. and S. 45 W, which would render the figure of the survey rectangular. But the subsequent call “to form a square figure as warty as, the vacancy will admit, to include the quantity,” clearly manifests the intention of the locator that the lines from the base should be controled by prior claims, if there should be any such which would inter* *365 fere with those lines extended at right angles from the base. Whether there were any such claims existing or not, or if there were, lsow far their position might require a variation of those lines from a rectangular figure, could not he presumed to be within the knowledge of a subsequent locator | and as the entry affords no means by which such a knowledge could be acquired, it is in this respect uncertain. Had the uncertainty been only in the extent of the lines from the base, the case would have been within the principle of the case of Craig and Mosby vs. Cogar, Hard. Rep. 383 ; but it is evident that the uncertainty exists in the course of those lines; and the case, so far as there is uncertainty in the course, comes completely within the principle of the case of Hanson, &c. vs. Lashbrook,(a) and other cases subsequently decided upon the authority of it. The uncertainty, howtver, in this case, does not, we apprehend, affect the whole location. The existence of prior claims might vary the course of the lines from the base, so far as the latitude of the call “ to run westwardly” would permit, but no farther : for notwithstanding there might be prior claims which could not be avoided by running those lines westwardly, yet to have extended them north, or south, or east, or any course which would in common acceptation receive its denomination from either of those points, would have been utterly irreconcileable with the intention of the locator as indicated by the call to run -ivestwardly, According to a fair construction of the entry, therefore, those lines must at all events have run westwardly. Consequently the land which would be common to a survey made by extending the lines from the base N. 45 W. and a survey made by extending those lines S.45 W. is certainly included in the entry; andtoso much of that as is included in the patent under which the appellants claim, they are entitled, unless an objection taken in ⅛⅜ argument to the derivation of their title should be sustained. The objection is, that they show no conveyance from the patentee. The appellants allege that the deed from the patentee was lodged in the clerk’s office of the Fayette county court, and that it was there -recorded, and that it was, together witli all the papers and records of that office, consumed by fire; and to prove that the deed had been made and executed, they produpcd on the trial a written acknowledgment to that effect signed by the patentee. That the deed may have *366 been destroyed, as the appellants allege, is a fact in it* self altogether probable; and as the allegation is supported by their affidavit, we can have no doubt that it is sufficiently verified to justify the admission of other evidence to show that the deed had been executed. If so, the written acknowledgment of the grantor is surely admissible evidence for that purpose. Had it been shown that there were subscribing witnesses to the deed, there might perhaps have been some room to doubt whether they or some of them ought not to have been produced ; but subscribing witnesses were not necessary to the validity of the deed, and it is not shown that there were any. The objection, therefore, to the derivation of the appellants’ title, cannot be sustained.
The decree must he reversed with costs, and the cause remanded, that a decree may be entered agreeable to the foregoing opinion.
Talbot and Bibb, counsel for the appellants, presented the following petition for a rehearing.
The counsel for the appellants most respectfully suggest, that the entry under which they claim falls within that class of cases which have heretofore been deemed valid, and that the opinion delivered by the court has treated the entry with a severity not consistent with former adjudications.
The entry having given a sufficient description of the marked tree, then expresses — “ to extend 200 poles N. and 200 poles S. from said tree, and from the extremities of said line westwardly, to form a square figure as nearly as the vacancy will admit, to include the quantity.”
The base given is certain as to length, as to course, and is identical and immoveable ; it depends upon no contingency : moreover the extremities of this base are precisely and expressly given as starting points from whence to construct the survey, and the side ⅞,⅛ bas<5 on which the land is to lie is described by “ wesfrvardly'S*
According to repeated decisions of the court, the 2e-Jinite base, and the expression westwardly therefrom, constitute a valid entry, and the survey is to be reclan-guiar. Upon this part of the entry it would he tedious to c*t° a¡l the cases up to this time from the case of Smith vs. Grimes, Hughes 18. (a) Hut we call the attention of the court to Craig vs. Hawkins's heirs, 1 Bibb 54, in fl10 court declare, that “ where an entry gives a *367 base line and calls to run off from that line northwardly, southwardly,” &c. “ the survey should be constructed upon that base line and at -right angles thereto.” The same principle is decided in Calk and Orear vs. Stribling, 1 Bibb 123, and in Preeble vs. Vanhoozer, 2 Bibb 120. In this case it is also declared to be a principle ‘‘well established,” “that the lines from the base ought to run at right angles thereto, unless there were calls in the entry which manifested the intention of the locator that they should be run differently.” — See also the cases and examples under the 29th rule in the index to 1 Bibb, title entries, p. 633.
In opposition to this well settled principle, the opinion of the court supposes that the call to run westwardly from the base, does not direct the course of the lines, but « admits of considerable latitude.” Whereas it is conceived that according to the aforegoing cases the principle is too firmly established now to be doubted, (without throwing down the whole fabric of judicial construction, and setting principles again afloat) that westwardly, when used in reference to a given base, does mean at right angles thereto, without latitude or flexibility in the angles.
In addition to these cases, we beg leave to call the attention of the court to the case of Manifee vs. Conn’s heirs, 2 Bibb 627, in which it is declared that a call rendered certain by construction, is to yield to an express call, whose effect does not depend upon construction, so far as the effect of the express call is repugnant to the constructive effect, “ but no farther.” In the opinion under consideration, there is not only a constructive call for right angles, but an express tall for a square figure, both which, without any repugnance in any other call, have been made to yield to an indefinite call for vacancy, Without any manfestation of an intention in the locator to depart from a right angled survey. The call for vacancy, can have no precise bearing op efficacy to bend the lines from the extremities of the base out of the,rectangular course; because there is no attempt to shew that to pursue the vacancy it Was necessary to depart from the rectangle, or that there Was a prior claim to which this allusion to vacancy could apply. Thus the angles which should be right angles, as well by the rules of construction as by the express call for a square figure, have been made obtuse and acute angles; the projecting lines bent *368 out of their course by a nonentity ; the entry itself resolved into a tertium quid, with three acute angles, retaining only a very small portion of the quantity located, by the effect given to the indefinite, unmeaning and contradictory expression, “ as nearly as the vacancy will permit.” Can that which has no meaning, no visible shape, no apparent body, no light, no voice or action, which has no faculty of attracting or propelling, manifest an intention in the locator to depart from the square figure or from the rectangular figure ? Before the allusion to vacancy can draw off the survey from the rectangle, or change the course of the lines, it ought to be made appear that necessity required such a departure ; that there were prior entries or appropriated land, to obstruct the rectangular survey. But none are made to appear — Be non apparentibus, et de non existentibus, ea-demestratio. — (Preeble vs. Vanhoozer, 2 Bibb 120.)
The cases in which an allusion to vacancy has vitiated an entry, are, May, Bannister, &c. a. s. Harrison, &c. Walton a. s. Cullom, and Hanson, &c. a. s. Lashbrook.
The cases in which allusion to vacancy has not been held fatal, are, Kennedy vs. Payne, Hard. 10 — Drake and Ramsay vs. Logan, Hard. 34 — Craig vs. Cogar, Hard. 386 — Wilson vs. Flemming, Hard. 582 — Overton and Reed vs Roberts, ante 154.
Upon examination of these cases, the distinction seems to be, if no certain base is given, but base and projecting lines depend upon vacancy, the entry is void. But if a certain base be given, and the projecting lines from it are certain by construction or expressly, but quantity along the lines from the base is referred to “ vacancy,” there the entry is valid for the exact quantity nearest to the base. In the opinion of Reed and Overton vs. Roberts, the case oí Hanson vs. Lashbrook is referred to as containing the distinction ; and in that case so referred to the court expressly destroy that entry, because “ the base of the entry depends for its extent upon the uncertain event” of obstruction by a prior line. But in the entry now under consideration, tlie base is not vague ; its course and length are precise, and its place certainly and immovably fixed. Here is a clear distinction from Hanson and Lashbrook, and the very distinction pointed at in the former cases in this court.
In all cases where entries have been destroyed, ⅛⅜ base has been uncertain, either in length, in course, ox *369 identical position, depending for some one or more of these upon an object not apparent or explained; as Where a call is to ad join a survey and include an improvement not shown ; there, although the course of the base line is determined by the survey to be adjoined, yet the length of the base and its identical position depends upon the relative situation of the improvement to the survey called for, and the distance of that improvement from that survey : for if it be necessary, the base will be extended beyond the angle or line of the survey to be adjoined, in order to include the improvement or other object, as in Black vs. Botts, 1 Bibb 95, where Calk’s pre-emption is directed, and various other cases. So where from a given point the call is to run eastwardly to include an object not shown or not notorious, the base is uncertain in length and in course, then “ eastwardly” is flexible to accommodate the expression to the relative or supposed situation of the object, that object not shown or not notorious being the relative standard to which the word “ eastwardly” applies.
But where the course of the base is certain, its length certain, and its position immovable, there cannot be a case found in which eastwardly, northwardly, west-wardly, &c. have not been declared inflexibly descriptive of a rectangular figure.
Considering, therefore, the word “ westwardly” in relation to this base of 400 poles north and south of the marked tree, as inflexibly descriptive of a right angle at each extremity of the base, and the expression a “ square figure” also manifesting the same intention in the locator, the words “ as near as the vacancy will permit” can apply only so far as to render it questionable whether the survey shall be an oblong rectangular figure, or a perfect square, each side of 400 poles ; and thus the entry is within that class of cases held váUd, and not affected by the call for vacant land.
Wherefore a rehearing or a modification of the former opinion is respectfully requested, •
Which upon consideration Was afterwards overruled.

 Vol. 30 543 - Cullom vs Walton, ante p. 132 - May. Bannifter, &c. vs. Harrifon, ante p 128.

 See Kenton vs. M'Connel, Hug. 169 - Bosworth vs. Maxwell, Hard 210 - Smith vs. Walten, 3 Bibb 153.