The Chief Justice
delivered the opinion of the court.
The appellee, who was complainant in the court below, asserts his right to the land, which is the subject of controversy, under the following entry:
“12th May, 1780&emdash;Uriel Mallory enters 2000 acres upon a treasury warrant, on the south side of Elkhorn, below the main fork, between the lines of general Stephens; and general Lewis, and to run along Stephens’ line towards the Kentucky river for quantity.”
The appellants have the elder grant, obtained upon ⅞ pre-emption of 400 acres, granted to James M’Nitt for an actual settlement. The certificate and entry are as foL low:
“January 14, 1780&emdash;James M’Nitt this day claimed a pre-emption of 400 acres, at the state price, in the district of Kentucky, lying on the waters of Elkhorn creek, about 3 miles from Leestown, at a sinking spring about one mile east of the stamping ground, by making an actual setr tlement in 1778. Satisfactory proof being made to the court, they are of opinion the said M’Nitt has a right to a pre-emption of 400 acres, to include the above location, and that a certificate issue accordingly.”
December 4, 1782&emdash;James M’Nitt enters 400 acres of land on a pre-emption warrant, No. 858, about 3 or 4 miles east of Leestown, on a sinking branch running towards the forks of Elkhorn, including his improvement on said run, as near the centre as other claimants will ad-
A decree invalidating an entry, is not binding on those who were not parties thereto, the only influence such decree can have on different parties, is as a precedent, & not even as a precedent if the preparation of the cause is materially variant,
rheCom’rs. rtificatefbr jre.emption icause of an dual settle-ent, is con-elusive proof ¡¿Xbut” party has yet toidenufythe "ettlement/11
*148 As the appellants have the elder, legal title, it seems proper, in the first place, to investigate the validity of the entry under which the appellee derives his right.
The entry was under consideration in the case of Allen and wife vs. Craig, 3 Bibb, 156, and was then deemed to be invalid, because there was neither proof of the notoriety of the surveys of generals Stephens and Lewis, nor did the certificates of their surveys contain such a description as would conduct an enquirer to their respective positions. The present litigants, however, not being parties to that suit, the decision then given can have no other influence in this case than as a precedent, nor even as a precedent can it have bearing, because the ease is now presented to the consideration of the court under a very different state of preparation. The certificates of Stephens and Lewis’s surveys are, indeed, the same, and we are still of opinion that the description they contain would be insufficient to dispense with the necessity of proof of the notoriety of those surveys. But the fact of their notoriety at and prior, to the date of the entry in question, is, in this case, established by a superabundance of testimony. There never was, perhaps, in any cause, a greater mass of evidence adduced fpr the establishment of any ope fact. TJpe depositions of a,host of witnesses have been taken, many of whom not only swear in general terms to the notoriety of fhosp surveys, ]>ut what is still more satisfactory, all of them depose to facts and circumstances, which lead the mind irresistably to the same conclusion. - It is true, that many of those witnesses were unacquainted with the precise position of the lines and corners of the surveys, but as the body of the tracts were well known, and the lines and corners are proven to have been plainly marked and easily traced, it is evident that it could not have required more than ordinary diligence to ascertain the boundaries of each tract. We can, therefore, have no hesitation in deciding the entry under which the appellee claims, to be valid, and that if ought to occupy the space between the surveys of Stephens and Lewis; and as it has been so surveyed, it follows that lie must have the better right in equity to the land in controversy, unless the appellants have established the pre-emptive dignity of their claim. We are, therefore, lead to the enquiry, how far they have succeeded in accomplishing this object.
The certificate under which the appellants claim, waf *149 granted to M’Nitt, in consideration of an actual settlement made by him on the tract granted, subsequent to the first day of January, 1778, and prior to the passage of the land law of 1779. That such settlement was, in fact, made the certificate, Is itself, no doubt, conclusive evidence. To establish the claim, however, as a pre-emption, it is still necessary to identify the place where the settlement was made. This may be done, either by the description of the place, contained in the certificate, or by proof of the fact dehors the certificate; and we know of no other way in which it can be done. That the certificate does not describe the place claimed by the appellants as M’Nitt’s set- , ⅜,. „ . - . . . , . . . , tlement with suilicient certainty and precision to conduct a subsequent enquirer to it, is very clear. There was a spring and an improvement at the place claimed by them; but there was nothing in or about the improvement that in-dicatedtbat it bad even been made by M’Nitt, much less that it had been a place where he had actually settled, and the spring is wide both of the course and distance called for in the Certificate from the place, which is unquestionably proven to have been called by the name of the “Stamping Ground;’’ nor can the spring, with propriety, be minated a sinking spring, as described in the certificate, for it runs a considerable distance, and connects itself with ether springs, as branches, before it sinks, and is therefore called by the witnesses a sinking branch; whereas, a sinking spring, according to their distinction between the two objects, runs but a short distance before it sinks, without having connected itself with añy other stream. These inaccuracies of the description contained in the certificate, when applied to' the place claimed by the appellants, will still be found to be more objectionable when we take into consideration the circumstances that there are in the same Section of country, other springs which arc properly sinking springs; that at most of them there were improvements, and that several of them correspond better with the course and distance called for in the certificate from the place known by the name of the “Stamping Ground.” It is clear, therefore, that the description contained in the certificate cannot identify the place claimed by the appellants, with the place of the settlement made by M’Nitt. It re-inains then to inquire how far this has been done by the proof dehors the certificate. Proof of this sort may, in this gs in every other case, be either positive or presump- *150 t¡ve. That there is any positive proof of M’Nitt’s having ever settled at the place claimed by the appellants, is not pretended, and the only evidence from which any presumption of the fact could arise, is the proof that the improve-p]ace ⅛ question was, at the date of the certificate, generally known by the name of M’Nitt’s improve-incut. This proof is not very satisfactory, for the fact is sworn toby but one witness, and there are two witnesses who swear that though {bey were, about the same period, conversant m that vicinity, they did not know of any improvement which was called M’Nitt’s. But admitting the fact, that the improvement was generally reputed to be his at the date of the certificate, still it would be but presumptive evidence of his having actually settled there; and this presumption, though it would be in the absence of all opposing circumstances, sufficient to establish the fact, yet we apprehend is more than countervailed by the circumstances that the improvement in question, was in truth made by M’Connel, and continued to be known as his, and never acquired the reputation of being M’Nitt’s until after the period when a settlement made by the latter would, by law, have entitled him to a pre-emption, and more especially by tile circumstance that the description in the certificate, when applied tp this place, is inaccurate, and corresponds better with other places in the same vicinity.' We are of opinion, therefore, that the place claimed by the appellants is not sufficiently identified as the place of M’Nitt’s actual settlement, and consequently that their claim, as a pre-emption, cannot be sustained. Whether as a treasury warrant claim it is good or not, need not be enquired; for as such, it con)t\ only take date from the entry with the surveyor, and that is posterior to the entry under which the appellee claims title.
This maybe done either des' cnption contained in the certificate,or byjestunony atUn e'
A certificate containing delusivecalls not
The testi-monyofas n- ^ ⅛11 ⅛1>01.(, ant fact, may prevailm ⅛¶ opposing-evi-déiice, ⅛ hut mustyield to a greater posing witnesses.
Hughes and Hardin for appellants, Bibb for appellee.
A claim losing its preemptive^chg-date’onlyfrom the entry with the surveyor.
The decree of the circuit court must be affirmed with costs