The Chief Justice
delivered the opinion of the court.
This is a contest for land under adverse conflicting clairns; fmd the first question which naturally arises is, whether the *276 entry under -which the appellant, who was complainant in The court below, asserts his claim to the land in controversy is valid or not. His entry is as follows, to wit:—
An ,entrt ly a call to adjoin a mi-htai-y^survey valid unless the survey was rptori- " ons in its iinii'y,
, , quent locator will not be knC)wmedthe calls'of a survey merely because it is •rtten that re-conils t0 °[⅞ countrv.
*276 “25⅛ December, 1782. John Howard enters 1945 \ a* <£creson a treasury warrant, No. 14,267, on the Ohio ri-uver, beginning at John Lawson’s lower corner, and run-“iiing clown the river, and back round the said Lawson’s “lines for quantity.”
It appears that previous to the date of this entry, John Lawson had obtained a grant upon a military survey of Í000 acres, lying on the Ohio river about 16 miles below the Kentucky river, and as he is not shewn to have had any other survey upon the Ohio nver, this must be assumed to be the one intended to be called for by Howard’s entry. But assuming this to be the survey called for by Howard *P his entry, it still remains to be enquired, whether he has given such a description of it os lo have enabled a subseqUent locator, with reasonable diligence, to find it; for if has not, his entry, notwithstanding the survey called for is identified, cannot be deemed valid It is not pretended that Lawson’s survey had acquired, at the date of Howard’s entry, any thing like general notoriety in its vicinity. Set far indeed was it from possessing any claim to general notoriety, that there is no proof that it was known even to a solitary inhabitant of the country. And as Howard’s entry contains no indication of the point on the Ohio where the survey was situated, it was manifestly impracticable that a subsequent locator by any search in pais, could have found it. In the records of the country alone, therefore, would he be able to obtain any information as to the position of Lawson’s survey; andas Howard’s entry does not describe the nature of the claim, the subsequent locator in search of it, would naturally, in the first instance, resort to the proper office in the district of Kentucky. But his search there would be vain and fruitless; for Lawson’s sur-vev being an old military one, could only be found in the office of the surveyor of Fincastle, or in the register’s office at Richmond, To have examined either of these , it "’ou^ ^ave keen necessary for a subsequent locator to tra-yerse a wilderness of several hundred miles, which at the date of the entry in question, and for many years after-lyards, was infested with a savage enemy, from whom no traveller was secure. To require that a subsequent locator should have done this, after he had fruitlessly and in *277 vain searched the proper office in Kentucky, would be exacting of him far more than could be demanded under the rule requiring reasonable diligence, and far more too than ever lias been sanctioned by an adjudication of this court,
But it was contended by the counsel for the appellant, that as Lawson’s survey was of record, subsequent locators must be presumed to have knowledge of it, and that they were bound at their peri! to take notice of the description it contained.
The position that a survey, because it is matter of record, must be presumed to be known, cannot be admitted to be correct.
There are cases in which, for particular purposes, and for special reasons, the law presumes matter of record to be known to others than those, who are parlies to the record; but the general rule is unquestionably otherwise. To presume all the records of the country to be known to every one, would be a pn sumption of the truth of that which we not only know not to be true, but which we know is utterly impossible to be true. Such a presumption, as it would be unreasonable, cannot be admissible. But we need not. resort to general reasoning upon the subject. The principle that such a presumption cannot he indulged, was settled,in the case of Smith vs. Walton, 3 Bibb, 152, was recognised and affirmed in the case of Hanson vs. Lashbrooke, ib. 543, and has since been acted upon in many subsequent cases.
If, then; subsequent locators cannot be presumed to have knowledge of the survey of Lawson, it follows that they could not be bound to take notice of the description contained in it. As indeed military surveys were ratified by the law of 1119, the land they covered was no longer vacant, and consequently not liable to ho appropriated by others. If, therefore, they made their locations so as to interfere with those surveys, they could not hold the land; but this did not result from the presumption that those surveys were known, or that the description they contained was notice to subsequent locators. For the consequence was the same to them, whether the survey with which they interfered was notorious or not, or contained any description or not. As, then, Lawson’s survey was not, at the date of Howard’s entry, notorious in its vicinity; as it would have been unreasonable to have required a subsequent locator to search for it in those offices where it could alone be *278 found; and as it cannot, merely becausé it was of record, be presumed to be known, it results that Howard’s entry, which depends exclusively upon Lawson’s survey to give it location, cannot be sustained; and that the court below decided correctly in dismissing the complainant’s bill.
Hardin and Wickliffe for appellant, fiibb for appellee.
The decree must therefore be affirmed with costs.